# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION



CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA.
FILED

OCT 24 2006

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

|  |  |
|---|---|
| DENA BOWERS, | CIVIL NO. 3:06cv00041 |
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION |
| RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA, ET AL. | |
| *Defendant* | JUDGE NORMAN K. MOON |

This matter is before the Court on several motions:

(1) Defendants' Motion to Dismiss,[1] filed July 26, 2006 (docket entry no. 2);

(2) Plaintiff's Motion to Strike Defendants' Attachments, filed on August 11, 2006 (docket entry no. 19);

(3) Plaintiff's Motion to Deny Motion to Dismiss and Require Answers to be Filed, filed on August 11, 2006 (docket entry no. 20); and

(4) Plaintiff's Motion to Strike Defendants' Additional Attachments, filed on August 21, 2006 (docket entry no. 24).

For the reasons set forth below, Defendant's Motion to Dismiss will be GRANTED in part and DENIED in part; Plaintiff's Motion to Strike Defendants' Attachments will DENIED; Plaintiff's Motion to Deny Motion to Dismiss will be GRANTED in part and DENIED in part; and Plaintiff's Motion to Strike Defendants' Additional Attachments will be DENIED, all in an order to follow.

---

[1] Defendants state in their memorandum supporting the motion to dismiss that they are entitled to qualified immunity. The Court will address this argument if Defendants move the Court to do so. *See* Fed. R. Civ. P. 7(b)(1).

# I. STANDARD OF REVIEW

Defendants move to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999).

In considering a Rule 12(b)(6) motion, a court must accept all allegations in the complaint as true, must draw all reasonable inferences in favor of the plaintiff, and should not dismiss for failure to state a claim unless the defendant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of [the plaintiff's] claim" that would allow the plaintiff relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Edwards*, 178 F.3d at 244; *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254-55 (W.D. Va. 2001). Stated differently, a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002). These tests are "prospective, not retrospective" and look "to what a plaintiff *can* show, not what she *has* shown." *Jordon v. Bowman Apple Prods. Co.*, 728 F. Supp. 409, 411 (W.D. Va. 1990) (emphasis added).

Additionally, the court is not required to accept legal conclusions without a basis in fact. *See, e.g., Edwards*, 178 F.3d at 244 ("[F]or purposes of Rule 12(b)(6), we are not required to accept as true the legal conclusions set forth in a Plaintiff's complaint."); *District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1979) (holding that a mere allegation in the complaint that the defendants acted under color of state law was insufficient to withstand scrutiny under Rule 12(b)(6) because, "[w]ere it otherwise, Rule 12(b)(6) would serve no function, for its purpose is to provide a defendant with a mechanism for

2

testing the legal sufficiency of the complaint").

Motions filed under Rule 12(b)(6) "should be granted only in very limited circumstances." *Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989). This is especially true for Rule 12(b)(6) motions made by plaintiffs seeking relief under 42 U.S.C. § 1983, as Plaintiff is here. *See Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir.1988) ("In evaluating a civil rights complaint for failure to state a claim under ... 12(b)(6), we must be especially solicitous of the wrongs alleged. We must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory [that] might plausibly be suggested by the facts alleged." (internal quotation marks omitted) (footnote call number omitted)); *see also Edwards*, 178 F.3d at 244.

## II. BACKGROUND

### A. Factual Background

Accepting all allegations in the complaint as true and drawing all reasonable inferences in favor of Plaintiff, the facts are as follows.

Plaintiff Dena Bowers was an employee of the University of Virginia ("University") for 17 years and, before the incident in question, had never been disciplined. According to Plaintiff, the University was engaged in efforts to restructure its pay scale system to the detriment of some University employees (but not Plaintiff).

The local chapter of the National Association for the Advancement of Colored People ("NAACP"), of which Plaintiff was a member, opposed the University's plan and met on October 10, 2005, to discuss the proposals. Kobby Hoffman ("Hoffman"), a fellow University employee and friend of Plaintiff's, was also a member of the NAACP but could not attend the meeting. Hoffman asked Plaintiff to send Hoffman a copy of the documents and charts that had

3

been distributed at the NAACP meeting.

Prior to working hours the next morning (October 11, 2005), Plaintiff used her University email account to send to Hoffman what Plaintiff describes as a personal email that included as attached files the documents Hoffman had requested. The documents were, according to Plaintiff, clearly labeled as NAACP documents. Plaintiff alleges that sending the email was not a part of her job and had nothing to do with her University duties.

Hoffman, also using her University email account, forwarded Plaintiff's email to two or three other people and also labeled the attachments as NAACP documents. One such recipient was a University employee identified only as "Mr. Booker" ("Booker"). Booker then used his University email account to forward the email to "hundreds" of other people.

Plaintiff stayed home from work on October 20, 2005, because she was ill. Defendant Yoke San Reynolds ("Reynolds"), the University's chief financial officer, called Plaintiff at Plaintiff's home to inquire about the email. Reynolds, who, according to Plaintiff, has no direct supervisory role over her, was joined by Defendants Nat Scurry ("Scurry") and Lucinda Childs-White ("Childs-White"), both of whom are Plaintiff's supervisors. During the course of the telephone call, Plaintiff answered all of Defendants' questions except two: (1) from where the NAACP documents originated and (2) to whom they were distributed. Plaintiff withheld answering those questions because she felt that the answers involved a personal and private matter involving the revealing of NAACP information and membership and that the University therefore did not have a right to demand an answer of her.

Approximately one month later, on November 17, 2005, Scurry and Childs-White told Plaintiff that she was facing termination and that she should "present her defense" by noon on

4

November 21, 2005, because there would be a hearing at 3 p.m. on November 22, 2005.[2] Although Plaintiff claims in her complaint that she was then told neither the nature of the claims against her nor what she had done wrong (*see* Compl. ¶ 38), she also claims that Defendants "indicated that this was for sending the email and for her reactions and interactions afterwards" (Pl.'s Mem. in Opp'n to Defs.' 12(b)(6) Mot. to Dismiss and in Supp. of Mot. to Strike 7).

On November 21, 2005, Plaintiff asked Scurry to specify the nature of the charges against Plaintiff, but Scurry did not respond. That evening, however, Plaintiff received, "indirectly and from a totally different source," what she claims was either "non-specific" information about the charges (Compl. ¶ 40) or "slightly more specific" information about the charges (Pl.'s Mem. 8).

At 3 p.m. on November 22, 2005, Plaintiff met with Scurry and Childs-White and asked for an opportunity to be heard, but Plaintiff was denied such an opportunity. (*See* Pl.'s Mem. 8 ("[S]he was handed [two] pink slips but her request to speak was refused.")) Scurry and Childs-White informed Plaintiff that her employment with the University had been terminated.

### B. Procedural Background and Causes of Action

Accordingly, Plaintiff brought this action in Virginia state court and Defendants timely removed it to this Court. Plaintiff alleges four causes of action in her complaint: Counts I alleges deprivation of procedural due process; Count II alleges violations of the First Amendment; Count III alleges civil conspiracy under Virginia law (Virginia Code § 18.2-500); and Count IV alleges common law breach of contract.

Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) and the Court heard arguments from the parties. This matter is therefore ripe for decision.

---

[2] It is unclear at this point why Defendants requested that Plaintiff "present her defense" more than a day before the scheduled hearing.

# III. DISCUSSION

## *A. Count I: Deprivation of Due Process*

Plaintiff has alleged that she was deprived of procedural due process in violation of the Fourteenth Amendment to the Constitution. Government employees with a protected property interest enjoy the protection of the Due Process Clause. *Gilbert v. Homar*, 520 U.S. 924, 928 (1997) ("The protections of the Due Process Clause apply to government deprivation of those perquisites of government employment in which the employee has a constitutionally protected 'property' interest."). In other words, a government plaintiff who can only be fired for cause has a property interest in continued employment. *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 538 (1985). Plaintiff and Defendants agree that Plaintiff here has a constitutionally protected property interest in her continued employment.[3]

Defendants claim, however, that there are two reasons why Plaintiff has failed to state a claim for a due process violation. First, Defendants allege, Plaintiff received notice and an opportunity to be heard prior to the time Plaintiff was terminated. Second, Plaintiff allegedly failed to pursue an available post-termination remedy though Virginia's established grievance procedure.

The Court turns now to an examination of exactly what process is required and whether Defendants have shown that Plaintiff received that process that was due her.

### *1. Process Required*

The Supreme Court made clear in *Loudermill* what pre-termination process is required: notice and an opportunity to respond. *Id.* at 546 ("The essential requirements of due process ... are notice and an opportunity to respond."). More specifically, plaintiffs are "entitled to oral or

---

[3] Defendant admitted this during oral argument.

6

written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.*; *Hanton v. Gilbert*, 36 F.3d 4, 7 (4th Cir. 1994).

For notice to be sufficient under the *Loudermill* test, the notice must be "'timely under the particular circumstances of the case'" and it must apprise the Plaintiff "'of the nature of the charges and general evidence against him.'" *Linton v. Frederick County Bd. of County Comm'rs*, 964 F.2d 1436, 1439 (4th Cir. 1992) (quoting *Gniotek v. City of Phila.*, 808 F.2d 241, 244 (3d Cir. 1986)).[4]

Defendants here claim that both elements were met and that therefore Plaintiff has failed to state a claim. Plaintiff alleges that what notice she received was untimely and did not apprise her of the nature of the charges against her. (*See* Pl.'s Mem. 9 (stating that Plaintiff was not informed of the nature of the charges against her *by the deadline for her defense* and that once the charges against here were only "*later* vaguely outlined for her" (emphasis added))).[5]

As for the timing prong, it is unclear why the noon deadline was set as a so-called "defense deadline" when it seems clear that her defense need only be prepared by the time of the hearing. Plaintiff admits she received a notice, albeit after this arbitrary deadline, but still before

---

[4] This second element of notice as stated by *Linton* is listed as a separate requirement under *Loudermill*. Because the Court finds below that Plaintiff has sufficiently stated a procedural due process claim, the distinction here is immaterial.

[5] Defendants assert that this "vague" information arrived in the form of an email sent to Plaintiff's attorney four hours after this "deadline," but still before the hearing. Defendants attached a purported printout of this email to their memorandum in support of their motion to dismiss. Plaintiff objects, stating that because Defendants included this email, the 12(b)(6) motion is thereby converted into a motion for summary judgment. *See* Fed. R. Civ. P. 12(b) ("If ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.").

If the court treats the 12(b)(6) motion as one for summary judgment, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Id.* Because the Court is convinced that Plaintiff's due process claim survives Defendants' 12(b)(6) motion without considering the attachment in question, the Court need not and will not address Plaintiff's argument here. The Court may *accept* materials outside the pleadings, but so long as it refuses to *consider* them, the motion is not converted to a motion for summary judgment. *See Wilson-Cook Medical, Inc. v. Wilson*, 942 F.2d 247, 251-252 (4th Cir. 1991) (finding that because there is "little distinction between a court specifically excluding affidavits and a court accepting but refusing to consider them," the district court "effectively excluded the affidavits relating to the Rule 12(b)(6) motion").

7

the day and time set for the hearing. Therefore, Plaintiff had sufficient notice. *See Holland v. Rimmer*, 25 F.3d 1251, 1251 n.19 (4th Cir. 1994) ("Notice is not rendered invalid merely because the employee had a limited amount of time to respond.") (citing *Linton*, 964 F.2d at 1440 (4th Cir. 1992) (noting that the time for response "alone does not provide the measure of adequacy" of process, but that a short amount of time "may be a factor" in such a consideration)).

As for the evidentiary explanation prong, "[d]ue process does not mandate that all evidence on a charge or even documentary evidence be provided in an employment dismissal case, only that such descriptive explanation be afforded as to permit employee to identify conduct giving rise to the dismissal and thereby to enable him to make a response." *Linton*, 964 F.2d at 1440. Because of the considerations below under the opportunity prong, the Court need not delve into a discussion of the question of whether Plaintiff here was given notice sufficient to appraise her of the nature of the charges against her and Defendants' general evidence against her.

The opportunity prong requires very little, *see, e.g., Loudermill*, 470 U.S. at 545 ("[T]he pretermination 'hearing,' though necessary, need not be elaborate."), but the Plaintiff must be given the chance to communicate on her own behalf, *see id.* ("The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement.").

Here, Defendants claim that Plaintiff "appeared on [the hearing] date but declined to present any such information" and that "her failure to avail herself of the opportunity to respond does not mean that she had no such opportunity." (Defs.' Mem. in Supp. of Defs.' Mot. to Dismiss 5) Plaintiff, however, alleges she did *not* have an opportunity to tell her side of the story.

8

(*See* Compl. ¶ 41 ("Plaintiff ... asked for an opportunity to be heard but the request was denied...."); Pl.'s Mem. 8 ("[S]he was handed ... pink slips but her request to speak was refused."))

Because of the standard of reviewing a 12(b)(6) motion, the Court must take Plaintiff's assertion as true; therefore, Plaintiff has alleged facts that could conceivably give rise to a claim that Defendants violated her procedural due process rights as guaranteed under the Constitution because Plaintiff was not afforded an opportunity to speak.

### 2. *Failure to pursue post-termination remedy*

Alternatively, Defendants also seem to argue that the mere fact that a post-termination remedy may have been available to Plaintiff means that Plaintiff's claim that Defendants failed to provide pre-termination due process is not a constitutional violation.[6] Although Defendants backed away from this stance at oral argument, the Court will nonetheless address it here.

Prior to the Supreme Court's 1985 holding in *Loudermill* that Plaintiffs must be afforded notice of the charges against them, an evidentiary explanation, and an opportunity to be heard, *see Loudermill*, 470 U.S. at 546; *Hanton v. Gilbert*, 36 F.3d 4, 7 (4th Cir. 1994), the Fourth Circuit held in *Detweiler v. Virginia Department of Rehabilitative Services*, 705 F.2d 557 (4th Cir. 1983), that the mere presence of a post-termination process may have been sufficient to overcome a lack of pre-termination due process, *see Detweiler*, 705 F.2d at 560 (relying on earlier Supreme Court cases in deciding that a "post-discharge hearing suffices" for due process);

---

[6] Plaintiff objects to Defendants including as part of their motion to dismiss purported copies of the written "Group II" violations given to Plaintiff at the "hearing" on November 22, 2005. These violations, according to Defendants, show that Plaintiff was a classified employee covered by the Virginia Personnel Act and, therefore, she had access to the state's grievance procedure. Although the Court has assumed without deciding that Plaintiff was eligible for grievance procedure in order to address Defendant's argument, the Court has refused to consider the attached documents in actually deciding Plaintiff's status. Because the Court has refused to consider these attachments, defendants' motion has not been converted into one for summary judgment. *See Wilson-Cook Medical*, 942 F.2d at 251-252.

9

*see also Holland v. Rimmer*, 25 F.3d 1251, 1258 (4th Cir. 1994).

Two years later, however, the Supreme Court made clear in *Loudermill* that pre-termination process is necessary to steer clear of Constitutional violations. "The opportunity to present reasons, either in person or in writing, why *proposed* action should not be taken is a fundamental due process requirement." *Loudermill*, 470 U.S. at 546 (emphasis added). The Fourth Circuit expounded on this in *Holland*. There, the court unambiguously stated that "*Loudermill* modified this court's holding in *Detweiler* by requiring an opportunity for some kind of a hearing *prior to discharge*." *Holland*, 25 F.3d at 1258 (emphasis added).

Although it is true that when post-termination procedures are in place to protect plaintiffs' due process rights, the pre-termination procedures "need not be elaborate," *see Linton*, 964 F.2d at 1439 ("When post-termination administrative procedures are afforded, … pretermination procedure[s] function[] only as 'an initial check against mistaken decisions — essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'" (quoting *Loudermill*, 470 U.S. at 546)); *Buschi v. Kirven*, 775 F.2d 1240, 1255 (4th Cir. 1985), there must still be *pre*-termination process.

Because the Court has already determined that Plaintiff has alleged facts sufficient to support a claim that she was *not* afforded pre-termination process (by virtue of not having an opportunity to be heard), Defendants' argument that Plaintiff was eligible for a post-termination grievance procedure — whether Plaintiff took advantage of such procedure or not — is immaterial. The Court therefore DENIES Defendants' motion to dismiss Count I of Plaintiff's complaint and GRANTS Plaintiff's motion to deny Defendant's motion to dismiss Count I.

10

### B. Count II: Violation of First Amendment

Plaintiff has alleged that her First Amendment[7] rights have been violated in two respects[8]: that her firing was in retaliation for her having shared information as a private citizen on a matter of important public concern and that her firing was based in part on her subsequent refusal to divulge private information concerning the local NAACP chapter.

#### 1. Retaliation

As the Supreme Court recently reiterated, "'a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression.'" *Garcetti v. Ceballos*, 126 S. Ct. 1951, 1955 (2006) (quoting *Connick v. Myers*, 461 U.S. 138, 142 (1983)). A public employee has the right under the First Amendment, in certain circumstances, to speak as a private citizen and address matters of public concern. *Id.* at 1958.

There are two questions in such an analysis. The first question is whether the plaintiff spoke "as a citizen on a matter of public concern" *Id.* If the answer is no, the plaintiff has no First Amendment protection based on a defendant's reaction to plaintiff's speech. If the answer is yes, however, the plaintiff has a possible First Amendment claim. The second question, then, is whether the defendants had "an adequate justification for treating the employee differently from any other member of the general public." *Id.* This question requires balancing two interests: "the interests of the [plaintiff], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 1957 (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568

---

[7] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

[8] Defendants read Plaintiff's complaint as alleging three First Amendment causes of action. In her memorandum in opposition and at oral argument, Plaintiff alleges only the two First Amendment claims listed.

11

(1968)); *see also id.* at 1958 (noting that the policy justification for such a balancing test is that "[a] government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations" (citing *Pickering*, 391 U.S. at 568)).

The question here, then, is whether Plaintiff has alleged facts to support her claim that she was speaking as a citizen on a matter of public concern. Plaintiff alleges that she has: she sent the email in question before working hours, she labeled the documents as being NAACP documents, and she sent the documents at the request of a friend. Defendants argue that because Plaintiff sent the email from her University email account and because she used her University computer, Plaintiff was not speaking as a citizen.

In support of their claim, Defendants rely on *Garcetti*. In that case, a district attorney (Ceballos) wrote a memorandum to his supervisors questioning the wisdom of going forward with the prosecution of a case that may have involved a search warrant that was issued based on serious misrepresentations. *Id.* at 1955-56. Ceballos was subsequently called as a defense witness in that case; he was later fired, allegedly for stating his concerns about the issuing of the warrant. *Id.* at 1955-56. The Court held that Ceballos was not speaking as a citizen because he wrote the memorandum pursuant to his official duties. *Id.* at 1959-60 (stating that the "controlling factor in Ceballos' case is that his expressions were made pursuant to his duties" and that he "spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case"). He wrote the memo "because that is part of what he … was employed to do." *Id.* at 1960.

The Court analyzed several factors in reaching its decision. The Court stated that the dispositive factor in *Garcetti* was not the fact that Ceballos expressed his views in his office

12

instead of publicly. *Id.* at 1959 ("Employees in some cases may receive First Amendment protection for expressions made at work."); *see also Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 414 (1979). This helps Plaintiff: if the situs of the communication *were* the dispositive factor, Plaintiff's speech here would not be protected as she admits she sent the email from her University computer before hours.

The dispositive factor in *Garcetti* was also not that the communication concerned the subject matter of his employment. *Garcetti*, 126 S. Ct. at 1959. ("The First Amendment protects some expressions related to the speaker's job."); *see also Pickering*, 391 U.S. at 573. Again, this helps Plaintiff: even assuming that her email contained material that could have originated from within her department at the University as Defendants have alleged, and even assuming that the contents of the communication related to the subject matter of Plaintiff's employment, Plaintiff's speech would not automatically be unprotected.

The dispositive factor in *Garcetti* was, however, the fact that Ceballos's expressions were made pursuant to his official duties. *Garcetti*, 126 S. Ct. at 1959-60. Plaintiff here has alleged facts that support an inference that her email was *not* made pursuant to her official duties. Put another way, Plaintiff has stated a claim that she was not employed to send personal emails with attachments bearing the label "NAACP," regardless of whether the email was sent from her University office using her University email account and regardless of whether the email contents concerned the subject matter of her employment.

The Court can infer from Plaintiff's allegations that Plaintiff has stated a claim similar to the (successful) claim in *Pickering*. In that case, a teacher wrote a letter to the editor of a local newspaper that was critical of the way the local school board had handled past proposals for tax increases (the local school board had recently proposed a tax increase); the newspaper published

13

the letter. *Pickering v. Bd. of Educ.*, 391 U.S. at 564-65. Plaintiff was fired and successfully sued under the First Amendment. *See id.* at 565.

Defendant alternatively argues that Plaintiff's claim must fail under *Urofsky v. Gilmore*, 216 F.3d 401 (4th Cir. 2001). In *Urofsky*, several Virginia public college professors challenged the constitutionality of Virginia law restricting state employees from accessing sexually explicit material on computers that are owned or leased by the state. *Urofsky*, 216 F.3d at 404. On rehearing en banc, the Fourth Circuit reversed the district court decision and held that "the regulation of state employees' access to sexually explicit material, *in their capacity as employees*, on computers owned or leased by the state is consistent with the First Amendment." *Id.* (emphasis added). The plaintiffs there never argued that they had a First Amendment right to access sexually explicit material on state-owned or state-leased computers *for their personal use*. The speech at issue in *Urofsky* — "access to certain materials using computers owned or leased by the state for the purpose of carrying out employment duties" — was held to not be a matter of public concern because such speech is "clearly made in the employee's role as employee." *Id.* at 408-09.

This is inapposite to the facts of this case. Plaintiff alleges, and the Court must accept as true, that she did not send the requested documents as an employee — that is, "for the purpose of carrying out [her] employment duties" — but instead sent them as a citizen.

"Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community." *Id.* at 406-07 (citing *Connick v. Myers*, 461 U.S. 138, 146 (1983)). Suffice it to say that Plaintiff has at least alleged facts that support a claim that her speech was a matter of public concern: the fact that the NAACP met to discuss the University's proposed pay scale alterations is good evidence that the community was interested.

14

Defendants' argument that "the fact that public employees may not have a First Amendment speech rights on the job[] doesn't mean that they don't have those rights off the job" (Defs.' Mem. 10-11) misses the point of a Rule 12(b)(6) motion. Whether public employees have First Amendment speech rights off the job has no bearing on whether those employees have First Amendment speech rights on the job. For purposes of a Rule 12(b)(6) motion, it is sufficient if a plaintiff has alleged facts that *could* give rise to First Amendment claim. Here, she has.

The next question, having assumed that Plaintiff has sufficiently alleged facts that could give rise to a First Amendment claim, is whether Defendants had "an adequate justification for treating [Plaintiff] differently from any other member of the general public." *Garcetti*, 126 S. Ct. at 1958 (citing *Pickering*, 391 U.S. at 568). The Court here "must take into account the context of the employee's speech, including the employee's role in the government agency, and the extent to which it disrupts the operation and mission of the agency." *McVey v. Stacy*, 157 F.3d 271, 278 (4th Cir. 1998). The court in *McVey* listed several factors the court should consider in making this inquiry,[9] all of which are more appropriately addressed at a later stage than at a Rule 12(b)(6) stage.

Plaintiff has certainly pled facts sufficient to state a claim upon which relief may be granted: it could be found that she was speaking as a citizen on a matter of public concern, and having determined that, that she may be able to succeed on the *Pickering* balancing test. Plaintiff's First Amendment retaliation claim will therefore not be dismissed here.

---

[9] The court should examine whether the employee's speech "(1) impairs discipline by superiors; (2) impairs harmony among co-workers; (3) has a detrimental impact on close working relationships; (4) impedes the performance of the public employee's duties; (5) interferes with the operation of the agency; (6) undermines the mission of the agency; (7) is communicated to the public or to co-workers in private; (8) conflicts with the responsibilities of the employee within the agency; and (9) makes use of the authority and public accountability the employee's role entails." *McVey*, 157 F.3d at 278 (internal quotation marks omitted).

15

## 2. Freedom of Association

Plaintiff has alleged that Defendants "impermissibly intruded upon her freedom of association" by arguing that her failure to answer two questions during the telephone call of October 20, 2005, constituted an intrusion on Plaintiff's freedom of association guaranteed by the First Amendment because she was fired, in part, for not divulging that information.

As the Fourth Circuit has stated, "[t]he right to associate in order to express one's views is inseparable from the right to speak freely." *Edwards v. City of Goldsboro*, 178 F.3d 231, 249 (4th Cir. 1999) (citing *Cromer v. Brown*, 88 F.3d 1315, 1331 (4th Cir. 1996)). A person's right to speak freely could not be "vigorously protected" unless a "correlative freedom to engage in group effort toward those ends were not also guaranteed." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). Those rights as a public employee, however, are not absolute. "[T]he limitations on a public employee's right to associate are closely analogous to the limitations on his right to speak." *Edwards*, 178 F.3d at 249 (internal quotation marks omitted).

As the *Edwards* case illustrates, the Court should engage in a balancing test similar to that invoked in *Pickering*. *See Edwards*, 178 F.3d at 249-50 ("Obviously, as in the free speech context, these are not governmental interests at all, let alone governmental interests that are sufficient to outweigh [the plaintiff's] interest in associating for the purpose of personal expression on a matter of public concern."). The court in *Edwards* then reversed the district court's dismissal pursuant to Rule 12(b)(6). *Id.* at 250.

Because the Court has here determined that there are factors that the Court should consider in balancing these interests and these factors are not appropriately addressed pursuant to a Rule 12(b)(6) motion, dismissal of this claim at this stage would be improper.

16

### C. Count III: Civil Conspiracy

Plaintiff has alleged that Defendants conspired to wrongfully fire Plaintiff and to issue false public statements in violation of Virginia Code § 18.2-500.[10] More specifically, Plaintiff claims that Defendants "conspired … with the objective of causing Plaintiff to be wrongfully fired for and, in connection therewith, in issuing false public statements, all of which … discredit[ed] Plaintiff by harming her in her profession, in her ability to find comparable trade or business work, and in her reputation." (Compl. ¶ 53)

Defendants provide three arguments in support of their motion to dismiss this claim: (1) Plaintiff's failure to allege how alleged conspiracy hurt her business; (2) Defendants' intra-corporate immunity; and (3) Plaintiff's failure to allege a violation of § 18.2-499. Because the Court finds that Plaintiff has failed to state a claim for civil conspiracy under Virginia law based on Defendants' first argument, that is the only argument the Court will address.

Put simply, Plaintiff's employment reputation is an employment interest and, according to a plethora of cases interpreting the statute, employment interests are universally held to be not covered by this statute. *See, e.g., Andrews v. Ring*, 585 S.E.2d 780, 784 (Va. 2003) (holding that as a matter of law, sections 18.2-499 and 18.2-500 did not apply to a former school board member who filed a civil conspiracy charge against the local prosecutor and county building inspector after the latter two sought criminal charges against him); *see also Buschi v. Kirven*, 775 F.2d 1240, 1259 (4th Cir. 1985) (stating that the plaintiffs, mental hospital employees who had spoken out against alleged wrongs committed in their hospital, had no civil conspiracy claim because such a claim "relates to their employment and possible injury to their employment

---

[10] "Any person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499, may sue therefor and recover three-fold the damages … and the costs of suit, including a reasonable fee to plaintiff's counsel[;] … 'damages' shall include loss of profits." Va. Code Ann. § 18.2-500 (West 2006).

reputation" and collecting cases consistently holding that a cause of action is "afforded [under these statutes] only when malicious conduct is directed at one's *business*, not one's *person*" (alteration in original)).

Section 18.2-500 "is aimed at conduct which injures a business" and should be "construed to exclude employment from its scope." *Buschi*, 775 F.2d at 1259. The holding in this case "followed the unanimous view of federal district courts sitting in Virginia that the state statute was not meant to supply a remedy for damage to one's employment status or relationship." *Jordan v. Hudson*, 690 F. Supp. 502, 507 (E.D. Va. 1988) (demoted postmaster failed to state a claim for civil conspiracy against three postal employees); *see also Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246 (W.D. Va. 2001) (citing *Buschi* and *Jordan* in holding that former employee's civil conspiracy claim against former employer could not withstand defendants' motion to dismiss).

The Court recognizes Plaintiff's submission of a Virginia circuit court order and a Virginia circuit court opinion that allegedly support her argument. But neither of those attachments include any facts specific to those cases that would allow the Court to draw comparisons to the facts of her case. Even assuming that those cases do, in fact, stand for the Plaintiff's proposition, they are in conflict with a Virginia Supreme Court decision holding that employment interests are not protected by section 18.2-500. *See Andrews v. Ring*, 585 S.E.2d 780, 784 (Va. 2003).[11]

Here, Plaintiff has failed to allege how the alleged conspiracy hurt her in her *business*. Instead, she alleges in conclusory terms that "the Defendants ... have harmed her reputation, harmed her in her profession, and in her ability to find comparable trade or business work." As

---

[11] Indeed, one of Plaintiff's attachments predates *Andrews* by three years. The legal viability of that

18

such, she has failed to state a claim for civil conspiracy.

### D. Count IV: Breach of Contract

Finally, Plaintiff has alleged that Defendants breached a contract they had with Plaintiff. Defendant argues, however, that "it is difficult to respond in great detail to a claim of breach of contract where the contract at issue has not been produced, nor has any provision or provisions of that contract been identified as having been breached." (Defs.' Reply Mem. in Supp. of Mot. to Dismiss 7-8) Plaintiff has not produced such a contract according to Defendants "because, quite simply, she has no such contract." (Defs.' Reply Mem. in Supp. of Mot. to Dismiss 8)

The Court agrees with Defendants that Plaintiff has not alleged the existence of a contract. Nowhere in Plaintiff's complaint does she even allege that a contract between the parties existed, let alone any facts that could give rise to that inference. Obviously, then, Plaintiff has not alleged what provisions of that contract the Defendants allegedly breached.

Plaintiff has failed to state a breach of contract claim and that claim will be dismissed.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss will be GRANTED in part and DENIED in part; Plaintiff's Motion to Strike Defendants' Attachments will DENIED; Plaintiff's Motion to Deny Motion to Dismiss will be GRANTED in part and DENIED in part; and Plaintiff's Motion to Strike Defendants' Additional Attachments will be DENIED, all in an order to follow.

It is so ORDERED.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

---

attachment, then, is questionable.

ENTERED: *[signature]*

United States District Judge

*October 24, 2006*

Date

20