IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| DENA BOWERS, *Plaintiff,* <br><br> v. <br><br> RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA, ET AL., <br><br> *Defendants* | CIVIL NO. 3:06cv00041 <br><br><br> MEMORANDUM OPINION <br><br><br> JUDGE NORMAN K. MOON |

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings, filed on January 30, 2007 (docket entry no. 54). The Court has already granted this motion by order filed on February 26, 2007 (docket entry no. 74). For the reasons stated below, the Court finds that the Rector and Visitors of the University of Virginia is not a "person" under 42 U.S.C. § 1983; similarly, University officials sued in their official capacities are not § 1983 persons.

## I. BACKGROUND

The Court explained the factual background in an opinion filed on October 24, 2006 (docket entry no. 27), which dealt with Defendants' motion to dismiss.[1]

In sum, Plaintiff Dena Bowers was an employee of the University of Virginia ("University"), which was engaged in efforts to restructure its pay scale system to the detriment of some University employees (but not Plaintiff).

The local chapter of the National Association for the Advancement of Colored People ("NAACP"), of which Plaintiff was a member, opposed the University's plan and met on

---

[1] As was evident at the summary judgment hearing on February 27, 2007, some of the facts have changed since the Court's February 26, 2007, order; these changes, however, do not affect the Court's resolution of Defendants' motion.

October 10, 2005, to discuss the proposals. Kobby Hoffman ("Hoffman"), a fellow University employee and friend of Plaintiff's, was also a member of the NAACP but could not attend the meeting. Hoffman asked Plaintiff to send Hoffman a copy of the documents and charts that had been distributed at the NAACP meeting.

Prior to working hours the next morning (October 11, 2005), Plaintiff used her University email account to send to Hoffman what Plaintiff describes as a personal email that included as attached files the documents Hoffman had requested. The documents were, according to Plaintiff, clearly labeled as NAACP documents. Plaintiff alleges that sending the email was not a part of her job and had nothing to do with her University duties.

Hoffman, also using her University email account, forwarded Plaintiff's email to two or three other people and also labeled the attachments as NAACP documents. One such recipient was a University employee identified only as "Mr. Booker" ("Booker"). Booker then used his University email account to forward the email to "hundreds" of other people.

Plaintiff stayed home from work on October 20, 2005, because she was ill. Defendant Yoke San Reynolds ("Reynolds"), the University's chief financial officer, allegedly called Plaintiff at Plaintiff's home to inquire about the email. Reynolds, who, according to Plaintiff, has no direct supervisory role over her, was joined by Defendants Nat Scurry ("Scurry") and Lucinda Childs-White ("Childs-White"), both of whom are Plaintiff's supervisors. During the course of the telephone call, Plaintiff answered all of Defendants' questions except two: (1) from where the NAACP documents originated and (2) to whom they were distributed. Plaintiff withheld answering those questions because she felt that the answers involved a personal and private matter involving the revealing of NAACP information and membership and that the University therefore did not have a right to demand an answer of her.

Approximately one month later, on November 17, 2005, Scurry and Childs-White told Plaintiff that she was facing termination and that she should "present her defense" by noon on November 21, 2005, because there would be a hearing at 3 p.m. on November 22, 2005. Although Plaintiff claims in her complaint that she was then told neither the nature of the claims against her nor what she had done wrong (see Compl. ¶ 38), she also claims that Defendants "indicated that this was for sending the email and for her reactions and interactions afterwards" (Pl.'s Mem. in Opp'n to Defs.' 12(b)(6) Mot. to Dismiss and in Supp. of Mot. to Strike 7).

On November 21, 2005, Plaintiff asked Scurry to specify the nature of the charges against Plaintiff, but Scurry did not respond. That evening, however, Plaintiff received, "indirectly and from a totally different source," what she claims was either "non-specific" information about the charges (Compl. ¶ 40) or "slightly more specific" information about the charges (Pl.'s Mem. 8).

At 3 p.m. on November 22, 2005, Plaintiff met with Scurry and Childs-White and asked for an opportunity to be heard, but Plaintiff was denied such an opportunity. (See Pl.'s Mem. 8 ("[S]he was handed [two] pink slips but her request to speak was refused.")) Scurry and Childs-White informed Plaintiff that her employment with the University had been terminated.

Accordingly, Plaintiff brought this action in Virginia state court and Defendants timely removed it to this Court. Plaintiff originally alleged four causes of action in her complaint: deprivation of procedural due process (Count I); violations of the First Amendment (Count II); civil conspiracy under Virginia law[2] (Count III); and common law breach of contract (Count IV).

---

[2] Va. Code Ann. § 18.2–500 (West 2007).

-3-

Defendants filed a motion to dismiss pursuant to Rule 12(b)(6). The Court dismissed Count III (civil conspiracy) and Count IV (breach of contract), but left intact Count I (deprivation of due process) and Count II (First Amendment violations).

Defendants have now filed a motion for judgment on the pleadings, alleging that the University and all defendants in their official capacities are not "persons" under 42 U.S.C. § 1983.

## II. STANDARD OF REVIEW

Motions for judgment on the pleadings are authorized by Rule 12(c) of the Federal Rules of Civil Procedure. The standard of review for Rule 12(c) motions is identical to that used for Rule 12(b)(6) motions. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999); *U.S.E.E.O.C. v. Bojangles Rests., Inc.*, 284 F. Supp. 2d 320, 325 (M.D.N.C. 2003) (citing 5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1368 (3d ed. 2004)).

As this Court has previously stated, "[t]he purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards*, 178 F.3d at 243–44. In considering a Rule 12(b)(6) motion, a court must accept all allegations in the complaint as true, must draw all reasonable inferences in favor of the plaintiff, and should not dismiss unless the defendant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of [the plaintiff's] claim" that would allow the plaintiff relief. *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957); *see also Edwards*, 178 F.3d at 244; *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001). Stated differently, a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002).

A plaintiff "must sufficiently allege facts to allow the Court to infer that all elements of each of his causes of action exist." *See Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 344–45 (4th Cir. 2006), *reh'g en banc denied*, 467 F.3d 378 (4th Cir. 2006); *see also Inman v. Klöckner-Pentaplast of America, Inc.*, No. 3:06cv00011, 2006 WL 3821487, at *4 (W.D. Va. Dec. 28, 2006) (collecting post-*Swierkiewicz* holdings in Rule 12(b)(6) cases in the Fourth Circuit). The Fourth Circuit has also stated, however, that motions filed under Rule 12(b)(6) "should be granted only in very limited circumstances." *Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989). This is especially true for Rule 12(b)(6) motions made by plaintiffs seeking relief under 42 U.S.C. § 1983, as Plaintiff is here. *See Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir.1988) ("In evaluating a civil rights complaint for failure to state a claim under ...12(b)(6), we must be especially solicitous of the wrongs alleged. We must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory [that] might plausibly be suggested by the facts alleged." (internal quotation marks omitted) (footnote call number omitted)); *see also Edwards*, 178 F.3d at 244.

## III. DISCUSSION

Defendants argue that Plaintiff's § 1983 claims against the University and the individual defendants in their official capacities cannot succeed as a matter of law because, they argue, none of them is a "person" for purposes of § 1983.[3] The Court agrees.

A plaintiff suing under Section 1983 must eventually prove the deprivation of a right by a "person" acting under color of state law. To state it bluntly, "a state is not a person within the

---

[3] "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...." 42 U.S.C.A. § 1983 (2007) (emphasis added).

-5-

meaning of § 1983." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 64 (1989). Because the Court has repeatedly held the University of Virginia to be an agency or instrumentality of the Commonwealth of Virginia[4] (albeit for immunity purposes[5]), it, too, falls outside the scope of a "person" for § 1983 purposes.

In support of its argument that the University is not a "person" under § 1983, the University points to *Kaimowitz v. Board of Trustees of the University of Illinois*, 951 F.2d 765 (7th Cir. 1991) and to *Bartges v. University of North Carolina at Charlotte*, 908 F. Supp. 1312 (W.D.N.C. 1995). In *Kaimowitz*, the Seventh Circuit held that the defendant University of Illinois—a state university—was immune from suit under § 1983. The court's rationale was simple: *Will* states that a state is not a person under § 1983 and the Seventh Circuit had previously held the University of Illinois to be an alter ego of the state; therefore, the University is not a person under § 1983. *See Kaimowitz*, 951 F.2d at 767–78. Using similar rationale, the *Bartges* court held that the University of North Carolina is not a person under § 1983. *See Bartges*, 908 F. Supp. at 1332–33.

A mountain of case law supports the proposition that the University is not a person under § 1983. In the Fourth Circuit, the Court of Appeals stated in a footnote that North Carolina State University would likely escape liability under § 1983 because it is not a "person" under § 1983. *See Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1139 n.6 (4th Cir. 1990) ("An

---

[4] *See* Va. Code Ann. § 23–62 to 23–91.23:1 (West 2007).

[5] *See, e.g., Jones v. Commonwealth*, 591 S.E.2d 72, 76 (Va. 2004) ("The University is a governmental entity. Its powers and duties, exercised by the Rector and Visitors of the University, are created by statute and are controlled by the General Assembly."); *James v. Jane*, 282 S.E.2d 864, 865 (Va. 1980) ("The President of the University has ultimate responsibility to the Rector and Board of Visitors, an agency of the Commonwealth of Virginia."); *see also Phillips v. Rector & Visitors of Univ. of Va.*, 34 S.E. 66, 67 (Va. 1899) ("It is plain that the University of Virginia is in the strictest sense a public institution, and that its grounds and buildings are public property, the property of the state, that it is governed and controlled solely by the state, that its grounds and buildings are wholly dedicated to public uses, and that the interest of the public constitutes its ends and aims.").

-6-

alternative and potentially dispositive basis for denial of the § 1983 claims against NCSU ... and the individual defendants in their official capacities is that, as alter egos of the state, they are not 'persons' within the meaning of § 1983. Because this ground was not advanced or argued by the parties, the Court does not here rely on it." (citing *Will*, 491 U.S. at 58)).

District courts in the Fourth Circuit have also endorsed this rationale. *See Costello v. Univ. of N.C. at Greensboro*, 394 F. Supp. 2d 752, 761 (M.D.N.C. 2005) (finding that the University of North Carolina at Greensboro is not a "person" under § 1983); *Googerdy v. N.C. Agric. & Technical State Univ.*, 386 F. Supp. 2d 618, 625 (M.D.N.C. 2005) (finding that North Carolina Agricultural and Technical State University is not a "person" under § 1983).

Outside the Fourth Circuit, virtually every court to consider the issue has agreed. *See, e.g., Williamson v. Ind. Univ.*, 345 F.3d 459, 463 (7th Cir. 2003) ("As for [Indiana University] itself, Williamson's civil rights claim is doomed by the fact that state universities are entities that are considered part of the state for § 1983 analysis."); *McLaughlin v. Bd. of Trustees of State Colls. of Colo.*, 215 F.3d 1168, 1172 (10th Cir. 2000) ("As we explained ..., a governmental entity that is an arm of the state for Eleventh Amendment purposes is not a 'person' for [S]ection 1983 purposes." (internal quotation marks omitted));[6] *Doe v. Bd. of Trs. of Univ. of Ill.*, 429 F. Supp. 2d 930, 942 (N.D. Ill. 2006) (finding that University of Illinois and its officials acting in their official capacities are not "persons" under § 1983); *Wells v. Bd. of Trs. of Cal. State Univ.*, 393 F. Supp. 2d 990, 995 (N.D. Cal. 2005) ("States, State agencies, and State officials sued in

---

[6] Defendants here cannot raise the Eleventh Amendment immunity issue because the case was originally brought in state court then removed to federal court. Such an action acts as a waiver of Eleventh Amendment immunity. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 624 (2002) ("We conclude that the State's action joining the removing of this case to federal court waived its Eleventh Amendment immunity ...."). This does not take away from the fact, however, that the University is an arm of the state for Eleventh Amendment purposes. *See, e.g., Tigrett v. Rector & Visitors of the Univ. of Va.*, 97 F. Supp. 2d 752, 756 (W.D. Va. 2000) (stating that the Court "has already held that the Rector and Visitors of the University, as an instrumentality of the state, is immune from suit in federal court" and collecting cases).

Case 3:06-cv-00041-NKM-JGW Document 84 Filed 03/16/07 Page 7 of 10 Pageid#: 1808

their official capacity are not considered "persons" within the meaning of § 1983."); *Bates v. Univ. of Tex. Med. Branch*, 425 F. Supp. 2d 826, 839 (S.D. Tex. 2003) ("[G]overnmental entities and governmental officials acting in their official capacity do not constitute 'persons' within the meaning of § 1983.").

There is authority to the contrary, however: *Gay Student Services v. Texas A & M University*, 612 F.2d 160, 163–64 (5th Cir. 1980) ("Consequently, an institution of higher learning, such as the university here involved, no longer enjoys absolute § 1983 immunity."), *Gressley v. Deutsch*, 890 F. Supp. 1474 (D. Wyo. 1994), and *Moche v. City University of New York*, 781 F. Supp. 160 (E.D.N.Y. 1992). None of these cases help Plaintiff, however.

*Gay Student Services* is unhelpful because the United States Supreme Court overruled that holding in *Will*. *See Will*, 491 U.S. 58, 61 n.3, 64 (1989) (noting a circuit split and holding contrary to the holding in *Gay Student Services*). *Gressley* does not help either. In *Gressley*, the district court's rationale in discussing whether or not the defendants are "persons" under § 1983 is not exactly clear. It does not attempt to distinguish *Will* (and, in fact, fails to cite the case at all), does not mention whether the defendants were sued in their official or individual capacities, *see Gressley*, 890 F. Supp. at 1483–84, and, at the end of the opinion, actually states that it does not have jurisdiction over the parties under § 1983, *see id.* at 1504 ("To summarize: this Court lacks jurisdiction over plaintiff's 42 U.S.C. § 1983 claims against President Roark and the University of Wyoming Board of Trustees, in their official capacities ...."). So to the extent *Gressley* contradicts Defendants' arguments, the Court finds that case not persuasive. Finally, *Moche* only addressed the defendants' immunity under the Eleventh Amendment and not whether or not they were "persons" under § 1983. *See Moche*, 781 F. Supp. at 165–66.

-8-

Plaintiff argues first that she should be able to recover here either because *Bivens*[7] would allow her to recover money damages for alleged constitutional violations or because *Bivens* suggested that federal courts ought to remedy constitutional violations if they are able. Neither argument is persuasive. The sole issue here is whether the Commonwealth and its instrumentalities are "persons" under § 1983. If they are, Plaintiff's § 1983 action against the University and the other defendants in their official capacities can go forward; if not, it cannot. Merely because *Bivens* might allow Plaintiff to recover does not mean that the University is a person under § 1983, the statute under which Plaintiff sued. And *Bivens* is irrelevant for another reason: *Bivens* gives plaintiffs a vehicle for suing federal officials. Plaintiff here is suing state officials.

Plaintiff argues second that Defendants are barred from asserting that they are not persons under § 1983 because Defendants waived Eleventh Amendment immunity when they removed the case to this Court. The case cited by Plaintiff, *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), is inapposite. In *Mt. Healthy*, the Supreme Court found that the school board was not entitled to Eleventh Amendment immunity because it was a political subdivision of the state of Ohio and not an arm of the state. *Mt. Healthy*, 429 U.S. at 279–81. In doing so, the Supreme Court stated: "The related question of whether a school district is a person for purposes of § 1983 is likewise not before us. We leave those questions for another day, and assume, without deciding, that the respondent could sue under § 1331 without regard to the limitations imposed by 42 U.S.C. § 1983." The only issue in this case is whether a state—and not a political subdivision of a state—is a person under § 1983. That was not an issue in *Mt. Healthy* and that case does not help Plaintiff here.

---

[7] *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

Case 3:06-cv-00041-NKM-JGW   Document 84   Filed 03/16/07   Page 9 of 10   Pageid#: 1810

Because of the overwhelming number of cases supporting Defendants' arguments, the Court will dismiss Plaintiff's claims against both the University and against the individual Defendants in their official capacities. *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is not different from a suit against the State itself.... We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." (citations omitted)).

Plaintiff's suit against the individual defendants in their individual capacities may proceed. *See Hafer v. Melo*, 502 U.S. 21, 26–27, 31 (1991) (reiterating the holding in *Will* with respect to officials sued in their official capacities, but holding that "state officials, sued in their *individual* capacities, are 'persons' within the meaning of § 1983." (emphasis added)).

## IV. CONCLUSION

For the foregoing reasons, the Court granted Defendants' Motion for Judgement on the Pleadings by order filed on February 26, 2007 (docket entry no. 74).

It is so ORDERED.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

ENTERED: _____
United States District Judge

Date: March 16, 2007