CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

OCT 09 2007

JOHN F CORCORAN, CLERK
BY:
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

Case No. 3:06cv00041

**DENA BOWERS,**

    *Plaintiff*(s)

v.

**RECTOR AND VISITORS OF THE
UNIVERSITY OF VIRGINIA, *et als.*,**

    *Defendants*

**MEMORANDUM OPINION
&
ORDER
GRANTING RULE 56(g) SANCTIONS
and
DENYING RULE 11 SANCTIONS**

By: Hon. James G. Welsh
U. S. Magistrate Judge

    This matter is now before the undersigned on cross-motions for sanctions. Invoking Rule 56(g), the defendants urge the imposition of sanctions against Dena Bowers (the "plaintiff") and her counsel, jointly and severally, on the basis of certain affidavits which they argue were filed in bad faith. Contending that the defendants' motion is in effect no more than a "legal temper tandrum" filed without any factual or legal basis, the plaintiff seeks dismissal of the defendants' motion and imposition of Rule 11 sanctions against them.

### I.    Procedural Background

    Alleging denial of due process (Count I), violation of her First Amendment rights (Count II), and pendant state law claims for civil conspiracy [1] (Count III) and breach of contract (Count IV), the

---

[1] Va. Code Ann. §§ 18.2-499 – 18.2-500 (1950, as amended).

plaintiff initially instituted this action in the state court following termination of her employment by the Rector and Visitors of the University of Virginia (the "University" or "UVa").

In addition to naming the University as a defendant, the plaintiff also named several specific University employees [2] as defendants in both their individual and official capacities. The factual background and the material parts of her claim are set forth in the district judge's opinions dated October 24, 2006 [3] and March 16, 2007,[4] and they do not need to be restated herein. After the case was timely removed to this court, both state law claims were dismissed pursuant to Rule 12(b)(6).[5]

Following a period of discovery, each party moved in writing for favorable summary disposition and submitted a number of affidavits and exhibits.

Seeking judgment in their favor on the pleadings, the defendants argued that the University and the individual defendants, in their official capacities as state officials, were not "persons" within the meaning of 42 U.S.C. § 1983.[6] In support of their summary judgment motion, the defendants separately argued the absence of any evidence to support the plaintiff's claim of any due process denial, the entitlement of the individual defendants to qualified immunity as a matter of law, and the

---

[2] The named defendants included Leonard Sandride (UVa executive vice-president), Yoke San Reynolds (UVa chief financial officer), and two of the plaintiff's supervisors, Nat Scurry (director of Human Resources Dept.) and Lucinda Childs-White (director of the Office of Staffing and Recruitment).

[3] Docket no. 27.

[4] Docket nos. 84 and 85.

[5] Docket nos. 27 and 28.

[6] Docket nos. 54 and 55.

2

absence of any evidence that either the UVa executive vice-pesident or its chief financial officer was in any way involved in the plaintiff's termination.[7] In support of their Rule 56 motion, the defendants attached twelve exhibits, including twelve pages from the plaintiff's deposition transcript, a composite exhibit consisting of the plaintiff's discovery responses, and ten witness affidavits.

In addition to a memorandum with multiple attachments [8] submitted in response to the defendants' summary judgment arguments, the plaintiff, by counsel, separately filed a motion seeking summary judgment[9] in her favor along with voluminous attachments. In her supporting memorandum, she argued that the "facts" established as a matter of law her First Amendment claims, both for "intrusion" on her rights to free association and on her right to the exercise of protected speech. She similarly asserted that her Fourteenth Amendment claims had been established on the basis of a "virtual smorgasbord' of due process violations, including among others her *de facto* termination on the date she was suspended with pay and termination for reasons the defendants "knew to be false."[10] Additionally, she argued that her procedural due process claim raised a genuine issue of material fact concerning whether she was denied a meaningful opportunity to be heard at her termination hearing. Along with this thirty-eight page summary judgment memorandum, the plaintiff submitted seventy-four exhibits totaling in excess of six hundred pages, including the plaintiff's undated, ten- page affidavit in which *inter alia* she offered patently inadmissible heresay accused one defendant of being

---

[7] Docket nos. 48 and 49.

[8] Document no 61.

[9] Document no. 51.

[10] Docket no.52.

3

a "compulsive liar," and alleged witness intimidation on behalf of UVa by its attorneys and others. This voluminous submission also included at least six complete deposition transcripts, approximately fifty-one unauthenticated e-mails, unauthenticated print-outs from a Virginia Employment Commission web page and a UVa web page, and three irrelevant NAACP documents.[11]

Contending that most of the plaintiff's evidentiary submission was inadmissible at trial, the defendants moved to strike the plaintiff's unauthenticated document submission and other inadmissible evidence, and they requested the imposition of sanctions pursuant to Rule 56(g).[12] In an unorthodox attempt to cure the defendants' objection to the e-mail traffic and copies of web pages, plaintiff's counsel responded by submitting her personal affidavit in which she stated that the contested exhibits were in fact "authentic" because the e-mails had been obtained from the defendants during the course of discovery and the web pages were taken from "published" internet web sites.[13] At the same time, counsel for the plaintiff also submitted a number of essentially irrelevant, unredacted deposition transcripts and affidavits adding nearly another three hundred fifty pages to her Rule 56 filings.

In large measure the defendants' motion to strike was granted, and the motion for sanctions was taken under advisement.[14] And by order[15] entered April 2, 2007 the motions for sanctions were

---

[11] See Docket no. 84.

[12] Document nos. 58 and 59.

[13] Docket no. 61, attachment 2.

[14] Document nos. 82 and 78. .

[15] Docket no. 109.

4

referred to the undersigned for disposition pursuant to 28 U.S.C.§ 636(b)(1)(A).

In the first of two written decisions dated March 16, 2007, the University and the individual defendants sued in their official capacities were each found not to be a "person" under 42 U.S.C. § 1983.[16] In the second of these decisions, UVa executive vice-president Sandridge and its chief financial officer Reynolds were dismissed as defendants upon a finding that there was "zero" evidence that either one had anything to do with the plaintiff's termination; the plaintiff's First Amendment (Count II) claim against the two remaining individual defendants was dismissed on the basis of qualified immunity, and the evidence was found to present a cognizable Fourteenth Amendment (Count I) issue of fact concerning whether the remaining defendants (Nat Scurry and Lucinda Childs-White) had provided the plaintiff with the requisite "opportunity to be heard.[17] Preserving certain appeal rights, the plaintiff subsequently stipulated her waiver of this remaining due process issue, and final judgment in favor of the defendant's was entered on April 2, 2007.

Pursuant to settled Supreme Court authority, this court retains jurisdiction over issues collateral to the merits, such as sanctions, even after the underlying litigation is no longer pending. *E.g., Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-396 (1990). "Like the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a . . . sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether there had been an abuse of the judicial process, and, if so, what sanction would be appropriate." *Id.* (citations omitted).

---

[16] Document no. 84.

[17] Document no 85.

5

Case 3:06-cv-00041-NKM-JGW   Document 126   Filed 10/09/07   Page 5 of 20   Pageid#: 2169

## II. Rule 56's Subjective "Bad Faith" Standard

Rule 56(g) provides:

Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party may be adjudged guilty of contempt.

In other words, "should the court become convinced" that any affidavits submitted pursuant to Rule 56 were presented or interposed in bad faith or solely for delay, the court "shall" award expenses to the other party. Wright, Miller & Kane Federal Practice and Procedure: Civil $3^d$ § 2742.

Although the term "bad faith" is not defined in the Federal Rules of Civil Procedure, as used in Rule 56(g) the phrase connotes a refusal to exercise legal judgment or an action taken without any colorable legal or factual basis. *See Sierra Club v. U. S. Army Corps of Engineers*, 776 F. $2^d$ 383, 390 ($2^d$ Cir. 1985) (To award attorney's fees on the basis of bad faith, the court must find clear evidence that the claim was "entirely without color."). "Under this test, a claim is 'entirely without color' when it lacks any legal or factual basis." *Id. Accord, Nemeroff v. Abelson*, 620 F.$2^d$ 339, 348 ($2^d$ Cir. 1980) (a claim is colorable "when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim"); *Analytica, Inc. v. NPD Research, Inc.*, 708 F.$2^d$ 1263,

6

1269 (7th Cir. 1983) (bad faith is defined as "without at least a colorable basis in law).

Therefore, to demonstrate the necessary "bad faith" the record must establish more than simply a weak or legally inadequate case. *Cornwall v. Robinson*, 654 F.2d 685 (10th Cir. 1981). It must show more than the maintenance of an aggressive litigation position. *Batson v. Neal Spelce Associates, Inc.*, 805 F.2d 546 (5th Cir. 1986). Likewise, it is more than the institution of litigation without making a reasonable pre-filing inquiry. *See Business Guides, Inc. v. Chromatic Communications. Enterprises*, 498 U.S. 533. 548 (1991).

However, an affidavit is presented in "bad faith" when it knowingly contains perjurious or intentionally false assertions or knowingly seeks to mislead by omitting facts central to a pending issue. *Scott v. Metropolitan Health* Corp., 2007 WL1028853 *26 (6th Cir. 2007); *Jaisan, Inc. v. Sullivan*, 178 F.R.D. 415-416 (SDNY, 1998). Likewise, where an affidavit is used to seek or to oppose summary judgment with no realistic hope of prevailing, or is used with no reasonable factual or legal basis for success, or is used with reckless disregard for its accuracy, or is used only for some argumentative or propaganda purpose, the use is "bad faith." 11 Moore's Federal Practice § 56.33. *See also Bouchentouf v. Key Capital Corp.* 2005 U.S. Dist LEXIS 33708 *6 (EDVa, 2005).

Although one can read Rule 56(g) to invoke an objective, or reasonable person, standard, it "is generally regarded as subjective" and requires the offending party to know that the affidavit was false, or was to be used solely for delay, or was recklessly prepared, etc. *See e.g., Business Guides Inc. V. Chromatic Communications Enterprises*, 498 U.S. 533, 448-549 (1991); *Crowe v. Smith*, 151 F.3d

7

217, 238 (5th Cir. 1998); *Fort Hill Builders, Inc. v. National Grange Mutual Ins. Co.*, 866 F.2d 11, 15-16 (1st Cir. 1989); *Warshay v. Guinness PLC*, 750 F.Supp. 628, 640-641 (SDNY. 1990).

In addition to its invocation of a subjective standard, Rule 56(g) also imposes an elevated burden of proof. Gregory, Sanctions: The Federal Law of Litigation Abuse, p. 448 (3d Edition, 2000). There must be "'clear evidence' of bad faith or vexatiousness." *Weinberger v. Kendrick*, 698 F.2d 61, 80 (2d Cir. 1982, *cert. denied* 646 U.S. 818 (1983). *See also Q-Pharma, Inc. V. Andrew Jergens Co.*, 360 F.3d 1295, 1302 (Fed. Cir. 2004); *Crowe v. Smith*, 261 F.3d 558 (5th Cir. 2001); *Q-Pharma, Inc. V. Andrew Jergens Co.*, 2002 U.S. Dist. LEXIS 27222 *8 (WDWash.); *R. B. Ventures, Ltd. V. Shane*, 2000 U.S. Dist. LEXIS 10170, *7-8 (SDNY).

Therefore, in order for the defendants to prevail on their Rule 56(g) motion, there must be "that measure or degree of proof" which produces in the mind of the fact finder "a firm belief or conviction;" it is "more than a mere preponderance," but it is less than clear and unequivocal. *Jones v. Pitt County Bd. Of Education*, 528 F.2d 414, 417 (4th Cir. 1975). *See also Balcar v. Bell*, 295 F.Supp. 2d 635 (NDWVa, 2003)

### III. Discussion of the Merits of Defendants' Motion

In essence, that portion of the defendants' sanctions motion which is directed to the plaintiff individually is based on parts of two affidavits[18] containing what the defendants describe as "scurrilous

---

[18] Document no. 52, exhibits B and K.

8

and *ad hominem*" attacks on their character. The basis for their sanctions motion against plaintiff's counsel, however, is more broadly based. It is their contention that she knowingly prepared and filed affidavits which were not based on the affiant's personal knowledge, which contained admissible heresay, which included impermissible character attacks, and which sought the relay of patently inadmissible evidence. [19] In addition it is their contention that counsel's "bad faith" can be clearly inferred from a review of her memoranda and largely irrelevant or inadmissible document submissions filed in a reckless and vexatious effort to defeat the defendants' summary judgment motion.

**A.**

Having made a careful review of the record as it relates to the defendants' motion directed to the affidavit-related conduct of the plaintiff, the undersigned finds that there has not been the requisite clear and convincing demonstration that she knew any portion of her or any other affidavit was false, recklessly prepared, to be used as part of a delaying tactic, or otherwise to be submitted in bad faith. Moreover, the undersigned is naturally reluctant to impose sanctions on litigants, since they generally have no legal knowledge or training. *See United States ex rel Scott v. Metropolitan Health Corp.*, 2005 WL 2405961, *11 (WDMich. 2005).

It is, therefore, ORDERED that the defendants' Rule 56(g) motion for sanctions against the plaintiff Dena Bowers personally is hereby DENIED.

---

[19] Document no. 58.

9

**B.**

In opposition to the defendants' motion for the imposition of Rule 56(g) sanctions on plaintiff's counsel, she has moved for its dismissal on the grounds that it was neither made in good faith nor reasonably supported by law or fact.[20] As amplified during argument, this defense took the form of three basic contentions. First and foremost, it was argued that the record contained nothing upon which to base a "clear and convincing" finding that either the plaintiff or her attorney knew any affidavit was either false or submitted solely for delay. Second, it was argued that in connection with the motion to strike and for Rule 56(g) sanctions any "bad faith" was in fact on the part of defense counsel because the motion was filed one day after counsel for all parties had informed the undersigned that no more discovery motions were anticipated. Third, it was argued that the absence of any finding by the district judge suggesting any of the submissions, either by or on behalf of the plaintiff, were frivolous underscores the absence of any direct evidence in the record to support a finding of the requisite bad faith.

The second and third of these contentions are unpersuasive. Each is simply irrelevant and fails to suggest any adequate reason upon which to believe the contested filings were submitted in the absence of bad faith or for some purpose other than delay.

The first of these arguments is also unpersuasive. After carefully reviewing the entire record in this case, the undersigned cannot escape the conclusion that plaintiff's counsel filed multiple affidavits in bad faith and is subject to sanctions pursuant to Rule 56(g). A review of the Motion for

---

[20] Document no. 118.

10

Summary Judgment (document no. 51), the Memorandum (document no. 52), its accompanying affidavits and other attachments, the Response in Opposition (document no. 61), and its accompanying affidavit and attachments, demonstrate clearly and convincingly a failure to exercise legal judgment, recklessly preparation, advancement of multiple submission and contentions made without any realistic hope of prevailing, and an apparent intent to obfuscate and to delay.

It is axiomatic, that Rule 56(e) requires that any affidavit offered to support, or to oppose, a motion for summary judgment must present admissible evidence; it must not only be based on the affiant's personal knowledge but it must show that the affiant possesses the knowledge asserted. *E.g.*, *Walling v Fairmont Creamery Co.*, 139 F.2$^d$ 318, 321 (8th Cir. 1943); *American Security Co. v Hamilton Glass Co.*, 254 F.2$^d$ 889, 893 (7th Cir. 1958); *F. S. Bowen Electric Co. v J. D. Hedin Constr. Co.*, 316 F.2$^d$ 362, 364-365 (DC App. 1963); *Union Ins. Soc. v William Gluckin & Co.*, 353 F.2$^d$ 946, 952-953 (2$^d$ Cir. 1965); *Pfeil v Rogers*, 757 F.2$^d$ 850, 859 (7th Cir. 1984), *cert. denied* 475 U.S. 1107 (1986); *Orsi v. Kirkwood*, 999 F.2$^f$ 86, 92 (4th Cir. 1993); *Thomas v IBM*, 48 F.3$^d$ 478, 485 (10th Cir. 1995). It does not appear from the record in the case now before the court that plaintiff's counsel made any discernible effort to comply with this requirement.

The memorandum (document no. 52) filed by plaintiff's counsel in support of her Rule 56 motion demonstrates a near total lack of focus on the fundamental issues presented in the case. In stead it appears to be based on a belief, founded neither in law nor in logic, that "the best defense [to a summary judgment motion] is a good offence." It predicates the plaintiff's claim to summary judgment entitlement, as the defendants outline in their response (document no. 62), on "an array of

11

inconsistencies, anomalies, and illogic." As an example, counsel's disregard of the then known facts of the case and her disregard of the settled nature of the applicable law are demonstrated by the memorandum's dismissive characterization of the defendants' qualified immunity defense as "verg[ing] on the frivolous."

Given the decisional ease with which the district judge found the defendants' qualified immunity defense to be meritorious, this too evidences the abject failure of plaintiff's counsel to exercise minimal legal judgment.

Additionally, the absence of structure and the massive volume of attachments speak strongly that both her summary judgment memorandum and the attachments, were submitted for consideration by the court without any realistic hope of prevailing. And for a combination of improper purposes, including obfuscation, vexation, and delay.

Although portions of the Response (document no. 61) and attachments filed by plaintiff's counsel in opposition to the defendants' Rule 56 motion demonstrate an abject failure on her part either to understand or to appreciate a number of evidence rules, including *inter alia* Evidence Rules 402, 404, 802, 805 and 901, they do not constitute a clear and convincing basis upon which to predicate a finding of bad faith or attendant recklessness preparation on her part. In other respects, however, this filing underscores and reiterates counsel's evident bad faith.

For example, the lack of any reasonable factual basis for her continued insistence that the

12

evidence showed the two senior University employee defendants (Sandridge and Reynolds) were "active participants, if not instigators," in plaintiff's termination, is evident from the district judge's subsequent finding that there was "zero evidence" that either defendant had anything to do with the plaintiff's termination.[21] Similarly, her lack of any reasonable legal basis for this contention is evident from the argument of plaintiff's counsel that summary judgment in favor of these defendants was not warranted because they had failed to disprove plaintiff's "information and belief" allegation of their involvement.[22]

The requisite bad faith on the part of plaintiff's counsel is also evident from her persistent argument that the plaintiff had been effectively terminated without requisite due process on October 29, 2005, the date that she was placed on administrative leave with pay. Plaintiff's counsel had unsuccessfully asserted the same contention in a similar 42 U.S.C. Section 1983 action against a public employer on behalf of a plaintiff police officer in *Mansoor v. County of Albemarle*, 124 F.Supp.2$^d$ 367 (WDVa, 2000). Therein, the presiding district judge unequivocally rejected this argument and noted that under the settled federal due process standard, a "plaintiff's suspension with pay [does] not violate the Fourteenth Amendment, even if it was a suspension . . . for punitive reasons." *Id*. at 380 (internal quotation marks omitted). In his rejection of this contention, the district court judge in *Mansoor* made specific reference the Supreme Court's observation in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 544-45 (1985), that an employer "can avoid the [due process] problem by suspending with pay." Additionally, the court in *Mansoor* noted his reliance on two

---

[21] Document no. 85.

[22] *Id.*

13

clearly relevant circuit court holdings. In *Royster v. Board of Trustees of Anderson County Sch. Dist. Number Five*, 774 F.2d 618, 621 (4th Cir. 1985), the Fourth Circuit had held that "any constitutionally protected property interest" arising as part of a plaintiff's "employment contract [is] satisfied by payment of the full compensation due under the contract." Similarly, in *Edwards v. California Univ. of Pa.,*, 156 F.3d 488, 492 (3d Cir. 1998), the Third Circuit held that neither suspension with pay nor any resulting reputation related stigma deprived a plaintiff of a constitutionally protected property or liberty interest.

In his opinion rejecting the same argument in the instant case, the presiding district judge succinctly noted, "This argument "has no legal authority to support it. In fact, legal authority relevant to plaintiff's argument states just the opposite."[23]

Having represented the plaintiff in *Monsoor*, having asserted precisely this same due process argument in the instant case, having absolutely no case law or statutory authority to support this claim of due process denial, and having cited the Fourth Circuit's *Mansoor* opinion [24] in her memorandum to support the proposition that her client's relevant rights were well-established, it defies logic and common sense to suggest, as she did during oral argument before the undersigned, that she had simply "forgotten" about the pertinent discussion and holding of district court in *Monsoor*.

Among other things, the submission by plaintiff's counsel of hundreds of pages of unredacted

---

[23] Document no.85, p. 20.

[24] *Mansoor v. Trank*, 319 F.3d 133 (4th Cir. 2003).

14

deposition testimony and the more than fifty unauthenticated copies of e-mails convincingly demonstrates both a recklessness and an absence of preparation on the part of plaintiff's counsel. Equally so, her resort to use of her own affidavit in a misguided quick-and-easy attempt to fix significant evidentiary deficiencies, demonstrates a recklessness in preparation and a failure to exercise legal judgment abject.

Although assessed pursuant Rule 11, the sanctions levied in *Avirgan v. Hull*, 705 F.Supp. 1544, 1545 (SDFla. 1989), *aff'd* 932 F.2$^d$ 1572, *cert. denied* 506 U.S. 952 (1991), is instructive in this case, particularly with reference to the provocative affidavit submissions described by the defendants as an "improper character assassination." In *Avirgan*, summary judgment on a claim alleging a conspiracy on the part of the defendants to aid the Nicaraguan Contras was denied on the basis of detailed affidavits indicating material issues of fact. When those facts were not supported at trial by any testimony, the trial court assessed in excess of one million dollars in sanctions against the plaintiffs' attorneys. Irrespective of whether those sanctions were requested pursuant to Rule 11's objective standard or Rule 56's subjective standard, *Avirgan* decision stands squarely for the principle that the patent absence of evidence to support for provacative averments in affidavits is sufficient for "bad faith" purposes.

As has been noted by the Fourth Circuit in the past, "the question of one's intent is not measured by a psychic reading of [an individual's] mind but by the surrounding facts and circumstances." *In re Katz*, 476 F.Supp. 2$^d$ 572, 577 (WDVa, 2007) (quoting with approval *United States v. Bolden*, 325 F.3$^d$ 471, 494 (4th Cir 2003)). As outlined herein, those surrounding facts and

15

circumstances in the instant case suggest most strongly that plaintiff's counsel knowingly acted in bad faith.

On the basis of the record as a whole, therefore, the undersigned simply cannot escape the firm conviction that counsel of the plaintiff in this case acted with the requisite "bad faith," as that term is used in Rule 56(g). *Inter alia*, the record demonstrates clearly and convincingly the following: (1) those portions of affidavits lettered B (paragraphs 30, 36 and 60) and K (paragraphs 5, 8 and 12) attached to document no. 52 were prepared by plaintiff's counsel, or under her direction, and were submitted with reckless disregard for accuracy; and (2) the affidavit of plaintiff's counsel (document no. 61, attachment #1) was recklessly prepared by plaintiff's counsel and demonstrates an abject failure to exercise rudimentary legal judgment.

Although sanctions in this case have been requested pursuant to Rule 56(g), Federal Rules of Civil Procedure, it merits mention in passing that 28 U.S.C. section 1927 directs that anyone, attorney or other person, "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." *See, e.g., State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3$^d$ 158, 180 (2d Cir. 2004); *Revson v. Cinque & Cinque, P.C.*, 221 F.3$^d$ 71, 79 (2$^d$ Cir. 2000).

### IV.    Amount of a Reasonable Rule 56(g) Sanction

16

The imposition of sanctions against either a litigant or an attorney is never a pleasant subject and at times seemingly harsh; nevertheless, sanctions are on occasion required either by the Federal Rules or by statute, or both, as a part of the court's impartial administration of it judicial function. As outlined above, certain actions of plaintiff's counsel in this case were undertaken and carried-out in contravention of her duties under Rule 56, and the imposition of a reasonable monetary sanction is appropriate.

Guidance in deciding how to assess a sanction can be found in a number of Fourth Circuit opinions. Although these decisions involve sanctions imposed pursuant to Rule 11, they identify four factors which should be consider in assessing sanctions. *See In re Kunstler*, 914 F.2$^d$ 505, 523 (4th Cir. 1990) (citing *White v. Gen. Motors Corp.*, 908 F.2$^d$ 675 (10th Cir. 1990)). These include: the reasonableness of the opposing party's attorney's fees, the minimum sanction necessary for deterrence, and the severity of the violation. *Id.* Of these, the deterrence of litigant and attorney misconduct is the most important factor, and the "amount of sanctions is appropriate only when it is the 'minimum that will serve to adequately deter the undesirable behavior '" *Id.* (quoting *White*, 908 F.2$^d$ at 684-685).

> Although the court must consider each of these factors, the Fourth Circuit has made it clear that the district court "is not required to engage in a lengthy discussion concerning what portion of the award is attributable to each factor." [*Arnold v. Burger King Corp.*, 719 F.2$^d$ 63, 67 n.4 (4th Cir. 1983)] This is because several of the factors "are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983).

17

The court is also entitled to take into account the ability of the sanctioned party to pay. *See, e.g., Byrd v. Hopson,* 108 Fed. Appx. 749, 756 (4th Cir. 2004) (unpublished) (citing *In re Kunstler,* 914 F.2$^d$ 505, 523 (4th Cir. 1990)). Although *Kunstler* addressed sanctions under Rule 11, it noted that "[t]he offender's ability to pay must also be considered, not because it affects the egregiousness of the violation, but because the purpose of monetary sanctions is to deter attorney . . . misconduct." *Kunstler,* 914 F.2$^d$ at 524. *See also Kapco Mfg. Co. v. C & O Enters.,* 886 F.2$^d$ 1485, 1496 (7th Cir 1989) (noting that a court may take into account ability to pay in a [28 U.S.C.] section 1927 claim).

*Salvin v. Am. Nat'l. Ins. Co.,* 2007 U.S. Dist. LEXIS 27172, *16-17 (EDVa, 2007).

Pursuant to the request for imposition of a monetary sanction, counsel for the defendants has asked for reimbursement of attorneys in the amount of $6,250.00. Without objection or suggestion that either the time or proposed hourly rate was unreasonable, defendants's counsel submitted for the court's consideration an itemization which included twenty-five hours at a billable rate of $250.00 per hour. The additional time attributed to the bad faith affidavit filings included the following: 2.5 hours to review and study the plaintiff's initial Rule 56 filing (document no 52) and attachments; 2.5 hours of related legal research; 3.0 hours drafting and filing the defendants' motion to strike and supporting memorandum (document nos. 58 and 59); 4.0 hours to review the plaintiff's response and to draft and file a further reply (document 73); 4.0 hours directly related to presentation and argument of the Rule 56(g) motion; and 9.0 hours of otherwise unnecessary time preparing and responding to the merits of the plaintiff's Section 1983 claims.

18

Given the voluminous Rule 56-related submissions by plaintiff's counsel, the obfuscation and prolixity of the memoranda and affidavits, and the absence of legal judgment underlying these submissions, the hours claimed by defendants' counsel appears to be both reasonable and conservative. The hourly rate suggested by University counsel appears, however, to be excessive, given the salary range in University Counsel's office and a reasonable estimate of the University's office-related overhead costs and other expenses associated with the full-time employment of an attorney.

Giving additional consideration to the minimum sanction necessary for deterrence and the severity of the Rule 56(g) violation, an award of $4,150.00 is appropriate.

For the reasons stated, pursuant to Rule 56(g), Federal Rules of Civil Procedure, it is ORDERED and ADJUDGED that the Rectors and Visitors of the University of Virginia be, and it hereby is, GRANTED an AWARD against Deborah C. Wyatt, plaintiff's counsel of record an AWARD in the amount of Four Thousand One Hundred Fifty Dollars ($4,150.00).

### V. Rule 11's Objective "Bad Faith" Standard

Succinctly stated, Rule 11 requires that any pleading, motion, or other filing by, or on behalf of, a party must have a proper purpose, have a basis in fact, and have some reasonable basis in law. *Chaplin v. DuPont Advance Fiber Systems*, 303 F.Supp.2$^d$ 766, 769, *aff'd.* 2005 U.S.App. LEXIS 4027 (4th Cir). Its principal purposes include punishment of litigation abuse, future abuse deterrence, compensation for victims of its violation, and docket management. *In re Kunstler*, 914 F.2$^d$ 505, 522-

19

523 (4th Cir. 1990). However, it is not intended to stifle creative or skilled advocacy. *See Cleveland Demolition Co. V. Azcon Scrap Corp*, 827 F.2d 984, 988 (4th Cir. 1987); *Davis v. Carl*, 906 F.2d 533, 538 (11th Cir. 1990).

### VI. Merits of the Plaintiff's Motion

Simply asserting that the defendants' motion to strike significant parts or her Rule 56-related evidentiary submission was "[neither made] in good faith nor reasonably supported by law or fact"[25] does not imply any merit to the assertion, particularly given the fact that the defendants were for all practical purposes the prevailing party.[26] Defendants' counsel describes the motion as "a strategic ploy that has absolutely no chance of success under existing precedent." With that assessment, the undersigned is compelled to agree. Put another way, this motion qualifies as an act of significant *chutzpah*. It is, therefore, ORDERED that the motion for sanctions pursuant to Rule 11 filed by the plaintiff is DENIED.

The Clerk is directed to transmit a copy of this Memorandum Opinion and Order Granting Rule 56(g) and Denying Rule 11 Sanctions to all counsel of record.

ENTER: this 9th day of October 2007

/s/ James G. Welsh
United States Magistrate Judge

---

[25] Document no. 118.

[26] *See* Document no. 82.

20

Case 3:06-cv-00041-NKM-JGW Document 126 Filed 10/09/07 Page 20 of 20 Pageid#: 2184